NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| Josephine SABLE, et al | : |
| Plaintiffs, | : |
| vs. | : Civ. No. 09-2813 |
| Jennifer VELEZ, Commissioner of Human Services; and John R. Guhl, Director, New Jersey Department of Human Services, Division of Medical Assistance and Health Services | : OPINION & ORDER |
| Defendants. | : |

THOMPSON, U.S.D.J.,

### INTRODUCTION

This matter comes before the Court upon Plaintiffs' Motion for Preliminary Injunction [5] and Defendants' Motion to Dismiss [17]. In the interest of expediency, the Court has elected to consider and rule on both motions simultaneously. For the reasons stated below, both motions are DENIED.

### BACKGROUND

Plaintiffs are all applicants for Medicaid services in New Jersey. Four of the plaintiffs have already had their applications denied by the state and local agencies responsible for processing applications, while one plaintiff's application has not yet been approved or denied. In each instance of denial, the state determined that the applicant (together with his or her spouse) possessed "available resources" in excess of $111,560, rendering him or her ineligible for

1

Medicaid benefits.  See 20 C.F.R. § 416.1201 (defining "resource").  The calculation of each applicant's resources is governed by state law and by Title XIX of the Social Security Act, also known as the Medicaid Act.  At issue in this case is whether the state acted properly by counting certain promissory notes owned by each applicant as part of that applicant's available resources.

The factual circumstances surrounding the creation of each of these notes are substantially similar.  In each case, the Plaintiff was originally in possession of cash or other liquid assets in excess of the Medicaid resource limits, rendering him or her ineligible for benefits.  The Plaintiff then lent a substantial sum of money to his or her child (or other close relative) in return for a promissory note.  Each promissory note was duly signed and executed and specified a rate of interest and a repayment schedule.  After this transaction, the Plaintiff was no longer in possession of money in excess of the Medicaid limits.  Therefore, the Plaintiff would qualify for Medicaid benefits unless the promissory note itself was counted toward the Plaintiff's resources.

The New Jersey Department of Human Services, Division of Medical Assistance and Health Services ("DMAHS") argues that each of these promissory notes qualifies as a "legal instrument or device that is similar to a trust," which would qualify it as a countable resource.  Plaintiffs argue that this counting violates federal law, and they have sued under 42 U.S.C. § 1983 to enjoin DMAHS from counting the promissory notes in question as trust-like devices.  Defendants oppose Plaintiffs' request for preliminary injunctive relief, and they have also moved to dismiss the complaint, arguing that Plaintiffs have failed to state a claim upon which relief may be granted.  They argue that the provisions of the Medicaid Act in question may not be enforced under § 1983, that the Court should abstain under the Younger abstention doctrine, and that Plaintiffs' requested relief exceeds the scope of their claim.

DISCUSSION

The Court will first discuss Defendants' Motion to Dismiss and will then move on to consider Plaintiffs' Motion for a Preliminary Injunction.

I. Defendants' Motion to Dismiss

A. Standard of Review

A motion to dismiss made under Rule 12(b)(6) should only be granted if, accepting all the allegations of the complaint as true and viewing them in the light most favorable to the plaintiff, the plaintiff is not entitled to relief. Maio v. Aetna, 221 F.3d 472, 482 (3d Cir. 2000). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997)).

B. Plaintiffs' Cause of Action Under 42 U.S.C. § 1983

Section 1983 permits plaintiffs to sue state officials for the deprivation of any right secured by federal law or the federal Constitution. Not every federal law may be enforced under § 1983, however. A plaintiff may only bring a suit to enforce a federal statute under § 1983 if (1) the statute creates specific, individually enforceable rights, (2) the statute uses rights-creating language, and (3) Congress has not precluded individual enforcement of that right. Sabree ex rel. Sabree v. Richman, 367 F.3d 180, 183 (3d Cir. 2004); see also Gonzaga University v. Doe, 336 U.S. 273 (2002) (holding that only an "unambiguously conferred right [will] support a cause of action brought under § 1983"). We will examine each of these requirements in turn.

The first requirement of the Sabree test separates federal laws that require states to reach particular outcomes for particular persons from those that simply compel the state to take some action but do not require that a particular case come out one way or the other. For example, in

Wright v. Roanoke Redevelopment and Housing Authority, the Supreme Court allowed plaintiffs to sue under § 1983 to recover rent overcharges because the Public Housing Act specifically provided for how the rent ceiling should be calculated. 479 U.S. 418, 432 (1987); Sabree, 367 F.3d at 184-85. By contrast, in Suter v. Artist M., the Supreme Court prohibited a plaintiff from using § 1983 to enforce the Child Welfare Act, which only directed the states to implement a plan that would make "reasonable efforts" to prevent the need for removal of a child to a foster home. 503 U.S. 347, 357 (1992); Sabree, 367 F.3d at 185-86. Laws that impose generalized duties upon the state but do not mandate individual outcomes may create "interests" or "benefits," but they do not create the kind of individualized "rights" that section 1983 protects. Gonzaga University, 536 U.S. at 283.

In this case, the provisions of the Medicaid Act at issue create specific rights that demand particular outcomes. For the benefits at issue here, the state is required by the Medicaid Act to determine eligibility using a methodology no more restrictive than that used by the federal supplemental security income program. 42 U.S.C. §§ 1396a(a)(10)(C)(i)(III); 1396a(r)(2)(A)(i). That methodology, laid out at 42 U.S.C. § 1382 et seq., is very specific; its application leads to specific outcomes in specific cases, and consequentially it can be enforced on an individual-by-individual basis. It is totally unlike the statute at issue in Suter, which only commanded the state to take reasonable efforts to minimize the number of children removed to foster homes.

The provisions of the Medicaid Act at issue in this case also use rights-creating language. Sabree identified several characteristics of rights-creating language: it is mandatory rather than precatory, it focuses on the individuals protected rather than the entity regulated, and the references to the individual do not appear "in the context of describing the type of policy or practice that triggers a funding prohibition." 367 F.3d 190 (quoting Gonzaga University, 536

4

U.S. at 280). 42 U.S.C. § 1396a(a)(10)(C) provides, in relevant part, "if medical assistance is included for any group of individuals . . . the plan . . . shall be no more restrictive than the methodology which would be employed under the supplemental security income program." The language found at 42 U.S.C. § 1396a(r)(2)(A)(i) is substantially identical. These passages have all the qualities of rights-creating language. They are mandatory, requiring the state rather than simply encouraging it. They describe how individuals are to be treated rather than how the state should function. And these references are not part of a passage that describes what kind of state practice would trigger a funding prohibition.

Indeed in <u>Sabree</u>, the Third Circuit explicitly held that 42 U.S.C. § 1396a(a)(10)—one of the subsections at issue in this case—contains rights-creating language. 367 F.3d at 192. Admittedly, <u>Sabree</u> dealt with 42 U.S.C. § 1396a(a)(10)<u>(A)</u>, while this case deals with 42 U.S.C. § 1396a(a)(10)<u>(C)</u>, but the language is not so different as to warrant a different outcome. Furthermore, the fact that § 1396a(a)(10)(C) speaks of "the plan" does not mean that it is focused on the entity regulated rather than the individual. The statutory passage at issue in <u>Sabree</u>, which was determined to contain rights-creating language, also was couched in terms of the "State plan." <u>Id.</u> at 182 n.4.

Finally, Congress has not precluded enforcement of the Medicaid Act through § 1983. Congress can preclude enforcement either by passing a law that expressly forbids private enforcement, or it can provide "a comprehensive remedial scheme, intended to preclude individual suits." <u>Sabree</u>, 367 F.3d at 193. The Third Circuit has already reviewed the Medicaid Act, and it has determined that there is no provision expressly precluding private enforcement. <u>Id.</u> It has also decided that the remedial component of Title XIX "falls far short of the

5

comprehensive enforcement schemes" that would indicate that Congress intended to preclude private enforcement.  Id.  This Court is bound to accept that conclusion.

42 U.S.C. §§ 1396a(a)(10)(C) and 1396a(r)(2)(A) meet the three elements of the Sable test:  The statutes create specifically and individually enforceable entitlements, they use rights-creating language, and Congress has not preempted their enforcement.  Therefore, they are enforceable under 42 U.S.C. § 1983.

    C.  The Younger Abstention Doctrine

Younger v. Harris stands for the rule that, under principles of judicial federalism, federal courts should not interfere with pending state criminal proceedings.  401 U.S. 37 (1971).  That rule was later expanded to cover state civil enforcement proceedings and state administrative proceedings.  See Huffman v. Pursue, Ltd., 420 U.S. 592 (1975); Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 (1982).  Younger abstention is appropriate whenever (1) there are ongoing state proceedings that are judicial in nature, (2) important state interests are implicated, and (3) the plaintiffs in the federal action will have the opportunity to raise their federal claims in the state proceedings.  O'Neill v. City of Philadelphia, 32 F.3d 785, 789 (3d Cir. 1994).

This Court finds that there are no ongoing state proceedings in this case.  Plaintiffs have all had their applications for Medicaid benefits denied (besides one plaintiff whose application is still pending), and none of them have requested a state administrative hearing to appeal that decision.  Defendants encourage this Court to see the denial of benefits and the available administrative appeal as ongoing judicial proceeding.  However, this argument ignores the distinction between coercive and remedial proceedings posited by the Third Circuit in O'Neill and by the Supreme Court in Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.

(477 U.S. 619 (1896)).  As those cases make clear, Younger does not require plaintiffs to avail themselves of remedial procedures provided by the state when 42 U.S.C. § 1983 provides a federal cause of action.  Rather, Younger and its progeny preclude a prospective plaintiff from using the federal courts as a means of heading off pending or imminent coercive proceedings brought by the state to enforce its laws.  See Dayton Christian Schools, 477 U.S. at 627 ("The application of the Younger principle to pending state administrative proceedings is fully consistent with Patsy v. Florida Board of Regents, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), which holds that litigants need not exhaust their administrative remedies prior to bringing a § 1983 suit in federal court.").

As discussed in the previous section, the Medicaid Act creates specific, individually enforceable rights.  Defendants are alleged to have violated those rights, and Plaintiffs are now faced with the decision of where to pursue a remedial action.  They are not seeking to evade any coercive proceedings brought by the state.  In situations such as this, Patsy dictates that plaintiffs are free to bring suit in federal court if they so choose. [1]

### D. The Scope of Plaintiffs' Requested Relief

Defendants argue that this case should be dismissed because "[t]he relief requested by plaintiffs exceeds the scope of their case."  (Def.'s Mem. of Law in Supp. of Mot. to Dismiss 25-26.)  In the same paragraph, the defendants make the alternative request that the court should limit its relief to the promissory notes involved in this case.  (Id.)  Defendants provide no authority for the proposition that an entire complaint should be dismissed simply because the requested relief exceeds the scope of the case.  Furthermore, this Court is not convinced that the

---

[1] In their briefing materials, Defendants rely heavily upon W.K. v. Division of Developmental Disabilities (794 F. Supp. 791 (D.N.J. 1997)) for the proposition that Younger requires a prospective plaintiff whose request for Medicaid benefits has been denied to complete the administrative appeals process.  W.K., however, makes no mention of the coercive/remedial distinction that has figured prominently in the more recent cases dealing with the Younger doctrine.  Therefore, we decline to adopt its holding in this case.

Plaintiffs' requested relief necessarily exceeds the scope of their claims. (See Am. Compl. 12.) At this point in the proceedings, it would be premature to speculate as to what sort of relief might be granted should Plaintiffs prevail in their claims. The Court therefore declines to dismiss the case on those grounds.

   II. Plaintiffs' Motion for a Preliminary Injunction

      A. Standard of Review

A preliminary injunction is an extraordinary form of relief, and it should only be granted if it appears that (1) the plaintiff is likely to succeed on the merits, (2) denial will result in irreparable harm to the plaintiff, (3) granting the injunction will not result in irreparable harm to the defendant, and (4) granting the injunction serves the public interest. Nutra Sweet Co v. Vit-Mar Enters., Inc., 176 F.3d 151, 153 (3d Cir. 1999). If the plaintiff fails to establish any of these elements, then the motion for preliminary injunctive relief should be denied. Id. (citing Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir.1990)).

      B. Likelihood of Success on the Merits

The state's decisions to deny benefits were based on determinations that each plaintiff's resources exceeded the limits under which he or she would be eligible to receive Medicaid benefits. As discussed in the introduction, these determinations depended on including the value of certain promissory notes in each plaintiff's pool of available resources. DMAHS included these promissory notes as available resources because it determined that each note qualified as a "legal instrument or device that is similar to a trust." To determine if Plaintiffs are likely to succeed on the merits of their case, this Court must therefore determine whether that counting is consistent with federal law.

8

The Medicaid Act itself does not appear to contain any further clarification of what is meant by the phrase "any legal instrument or device that is similar to a trust." See 42 U.S.C. §§ 1382b(e), 1396p(d).  However, the Social Security Administration has promulgated a Program Operating Manual System ("POMS"), which represents the "publicly available operating instructions for processing Social Security claims."  Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 385 (2003).  These interpretations are not products of formal rulemaking, but they still warrant judicial respect.  Id. (citing Skidmore v. Swift & Co., 323 U.S. 134, 139-40 (1944).  According to the POMS, a trust-like device exists whenever (1) a grantor (2) transfers assets (3) to a person or entity with fiduciary obligations (4) to be held or administered for the benefit of the grantor or others.  POMS SI 1120.201B.5; POMS SI 1120.201G.1.  The Third Circuit has already used these administrative rules in interpreting and applying 42 U.S.C. § 1382b(e), so this Court will do the same.  See Kelley v. Comm'r of Social Sec., 566 F.3d 347, 350 (3d Cir. 2009).

The first two elements of the POMS test do not appear to be in dispute:  In each instance, a Plaintiff transferred assets to another person—namely one of his or her children—and received a promissory note in return.  Whether or not these notes qualify as trust-like devices then turns on whether or not the children bear fiduciary obligations to the Plaintiffs, that is, whether they are holding the money they received for the Plaintiffs' benefit.

Not surprisingly, the parties disagree over whether the Plaintiffs' children should be considered fiduciaries.  The Court must therefore make an inquiry into whether a fiduciary obligation has arisen.  As the New Jersey Supreme Court has explained,

> [t]he essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position.  A fiduciary relationship arises between two persons when one person is under a duty to act for

9

> or give advice for the benefit of another on matters within the scope of their relationship.

F.G. v. MacDonell, 150 N.J. 550, 563 (1997).  There are three situations in which a fiduciary duty arises: (1) traditional fiduciary relationships such as principal and agent, (2) situations in which one or both parties expressly repose trust and confidence in the other or where such trust and confidence is necessarily implied, and (3) contracts or transactions which are intrinsically fiduciary.  United Jersey Bank v. Kensey, 306 N.J. Super. 540, 551 (1997).

Only the second of these three situations is at issue.  A lender-borrower relationship is not a traditional fiduciary relationship, and the lending transaction is not an intrinsically fiduciary transaction.  Therefore a fiduciary obligation exists in this case only if there was an express acknowledgement of trust and confidence between lender and borrower, or if the factual circumstances demonstrate that such confidence was necessarily implied.  Whether or not DMAHS acted appropriately in counting the promissory notes as trust-like devices thus turns on whether or not the facts surrounding the creation of those notes show that Plaintiffs' children took possession of Plaintiffs' money with the understanding that they were to hold it in trust as a fund to be gradually repaid for the Plaintiffs' benefit.  If the facts show that there was such an understanding, then the notes are trust-like devices, and the state acted properly.  If the facts do not show that the Plaintiffs' children were expected to exercise any special care in safekeeping the money, then the notes were not trust-like devices.

At this point in the proceedings, Plaintiffs have not provided sufficient evidence to demonstrate that they will likely prevail at trial on this issue.  The Plaintiffs have produced copies of the promissory notes, and the notes do not on their face indicate the existence of any fiduciary relationship.  However, the Plaintiffs have presented no additional evidence that tends to prove that the promissory notes were created without the understanding that the borrowers

would simply hold the money they received for the lenders' (Plaintiffs') benefit. The only exception is a single, conclusory sentence in George Sable's affidavit, where he states, "My son did not create any fiduciary relationship for my benefit or my wife's benefit." (Pltf.'s Mot. for Prelim. Inj., Ex. A, Aff. of George Sable ¶ 20.)  Defendants' evidence on this point is similarly thin, consisting of a single affidavit by an employee of DMAHS who asserts that some of Plaintiffs' children had power of attorney or guardianship over their respective parents. (See Cert. of Elena Josephick, appended to Defs.' Opp'n to Mot. for Prelim. Inj.)  However, it is the Plaintiffs' burden to establish that they are likely to succeed on the merits. Loans between close relatives, and especially parent and child, are often made in an atmosphere of trust and confidence that is absent from marketplace loans. Therefore, Plaintiffs cannot simply rest on the terms of the notes themselves to prove that the loans were arms-length transactions rather than trust-like arrangements. Given the evidence presented, this Court cannot conclude that it is more likely than not that the promissory notes were created without any understanding that the children would hold the money for the benefit of their parents. Since Plaintiffs have not convinced the Court that they are likely to prevail at trial, their motion for a preliminary injunction must be denied.[2]

## CONCLUSION

For the reasons stated above, it is ORDERED, on this 13th day of October that Plaintiffs' Motion for a Preliminary Injunction [5] is DENIED and that Defendants' Motion to Dismiss [17] is DENIED.

*/s/ Anne E. Thompson*

ANNE E. THOMPSON, U.S.D.J

---

[2] Because Plaintiffs have failed to demonstrate that they are likely to succeed on the merits at trial, the Court does not reach the issues of irreparable harm to the parties or whether an injunction is in the public interest.