NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| Mary SABLE; and Michael LANZA, | : |
| Plaintiffs, | : |
| vs. | : Civ. No. 09-2813 |
| Jennifer VELEZ, Commissioner of Human Services; and John R. Guhl, Director, New Jersey Department of Human Services, Division of Medical Assistance and Health Services | : OPINION & ORDER |
| Defendants. | : |

THOMPSON, U.S.D.J.,

INTRODUCTION

This matter comes before the Court on Plaintiffs' Second Motion for a Preliminary Injunction [docket # 48] on remand. The Court has decided the motion after considering the parties' submissions, without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons below, the motion is DENIED.

BACKGROUND

Plaintiffs Mary Sable and Michael Lanza are applicants for Medicaid services in New Jersey who were denied Medicaid assistance after the relevant state agencies determined that Plaintiffs (together with their spouses) possessed too many "available resources" to qualify under the Medicaid statute. *See* 42 U.S.C. § 1396 et. seq.; 20 C.F.R. § 416.1201 (defining "resource"). Plaintiffs originally possessed cash or liquid assets in excess of the Medicaid eligibility limit.

1

However, prior to applying for Medicaid benefits, Plaintiffs transferred substantial sums of money to their children in return for unsecured promissory notes, which would bring their resources within the limits if the notes were not counted.[1] The state agencies nevertheless denied the applications because the agencies characterized the promissory notes as trust-like devices. Trust-like devices are counted towards an applicant's pool of resources under the Social Security Administration's Program Operating Manual System ("POMS"), which establishes tests for the treatment and valuation of different types of instruments.[2]

On June 18, 2009, Plaintiffs filed this suit against the New Jersey Department of Human Services and the division that administers the Medicaid program, the Division of Medical Assistance and Health Services ("DMAHS").  Plaintiffs alleged that Defendants acted contrary to law in treating the promissory notes as trust-like devices and sought a remand so that DMAHS could analyze their applications under the proper rubric—as either cash loans (POMS SI § 1120.220) or promissory notes (§ 1140.300).  This Court denied the Plaintiffs' motions for a preliminary injunction and for reconsideration, holding that they were unlikely to succeed on the merits because no federal law prevented the state from analyzing their promissory notes as trust-like devices, even if they could also be characterized as cash loans. (Op. Den. Mot. for Prelim. Inj., Oct. 16, 2009) [32]; (Op. Den. Mot. for Recons., Dec. 18, 2009) [41].  Plaintiffs appealed to the Third Circuit, which vacated and remanded the denial of the preliminary injunction.  The

---

[1] According to Defendants, Plaintiff Mary Sable and her husband possessed $123,000, and Plaintiff Michael Lanza possessed $240,000, in excess of the Medicaid eligibility limit. (Opp'n Br. 1; *see* Am. Compl. Ex. G, at 1, 3.) Sable's husband purchased two unsecured promissory notes from their son for a total amount of $123,403. (Am. Compl. ¶ 28.)  Lanza's wife purchased one unsecured promissory note in the amount of $80,000 from each of their three children for a total of $240,000.  (*Id.* ¶ 31.)

[2] When determining eligibility for benefits under Medicaid, state agencies must employ a methodology that is "no more restrictive than the methodology which would be employed under the supplemental security income program." 42 U.S.C. § 1396a(a)(1)(C)(i)(III). POMS is the "publicly available operating instructions for processing Social Security claims." *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003). These interpretations are not products of formal rulemaking, but they still warrant judicial respect. *Id.* (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944).

Circuit pointed to POMS SI § 1120.201(G)(1), which states that the agency "will not consider these arrangements under trust rules if they would be counted as resources under regular [Supplemental Security Income] resource-counting rules." *Sable v. Velez*, 2010 WL 2929918, at *5 (3d Cir. July 28, 2010). The Circuit held that this Court "committed legal error when it analyzed the notes as trust-like devices without first determining whether they would be counted as resources under the regular resource-counting rules" — that is, as cash loans or promissory notes. *Id*. at *7. We now reconsider Plaintiffs' request for a preliminary injunction, applying the framework designated by the Third Circuit.

## ANALYSIS

A. Legal Standard

To secure a preliminary injunction, the moving party must show: (1) that it is likely to succeed on the merits; (2) that it will suffer irreparable harm if injunctive relief is denied; (3) that granting the injunction will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). Injunctive relief is an "extraordinary remedy" warranted only in "limited circumstances." *Id*.

B. Likelihood of Success on the Merits

Plaintiffs argue that, as a matter of law, Defendants could not count their notes as trust-like devices, but must instead treat the notes as cash loans or promissory notes. (Br. in Supp. 1.) Although cash loans, promissory notes, and trust-like devices can all be counted towards an applicant's resources in determining Medicaid eligibility, Plaintiffs want the Court to treat their notes as promissory notes or cash loans and remand the case to DMAHS for valuation of the notes. On remand to the agency, the Plaintiffs will apparently argue that the notes—although

resources—have a current market value of zero, and therefore do not push them over the eligibility limit. (*Id*. at 1 n. 1.)

To show a likelihood of success on the merits, Plaintiffs must prove that it was improper for Defendants to treat the notes as trust-like devices. According to the POMS, an instrument cannot be considered under the trust rules if it would be counted as a resource under the "regular SSI resource-counting rules." § 1120.201(G)(1)). Therefore, we must first consider whether the notes qualify, under the regular rules, as promissory notes under § 1140.300 or as cash loans under § 1120.220. Only if the notes do not qualify under either provision can we then consider whether the notes are countable as trust-like devices.

1. <u>Cash Loans</u>

To qualify as a cash loan under the POMS, an instrument must be a "negotiable, bona fide loan agreement." § 1120.220(B)(2)(a). The POMS states that an informal loan, such as the notes at issue here,[3] will be considered "bona fide" if (1) it is enforceable under state law, (2) it is in effect at time of transaction, (3) there is an acknowledgment of an obligation to repay, (4) there is a plan for repayment, and (5) the repayment plan is feasible. § 1120.220(C).

The first four requirements are not in doubt. Defendants appear to concede the first three, (s*ee* Opp'n Br. 11), and the fourth is satisfied by the repayment schedules documented on the notes themselves, (*see* Amd. Compl., Ex.'s B, C). Only the feasibility of the repayment plan is in question. To determine whether a repayment plan is feasible, the POMS directs us to "consider the amount of the loan, the individual's resources and income . . . , and the individual's living expenses." § 1120.220(C)(5). Here, the loan amounts are substantial ($240,000 and $123,403), the loans are not backed by any collateral, and there is no documented evidence of

---

[3] The parties agree that the Plaintiffs' notes are "informal loans," that is, "loan[s] between individuals who are not in the business of lending money or providing credit." POMS SI § 1120.220(C).

the borrowers' resources, income, or expenses. The Court is left, therefore, with a paucity of objective evidence demonstrating that the repayment plans are feasible. The only objective evidence is the promissory notes themselves, which Defendants argue are not real loan agreements but rather trust-like arrangements designed to avoid Medicaid's eligibility limit.[4]

The lack of evidence of the feasibility of repayment is sufficient, in itself, to support a finding that Plaintiffs' notes likely fail the POMS test for a bona fide loan agreement.[5] However, strict adherence to the POMS test may not be warranted on the facts before us. We cannot ignore evidence of bad faith simply because it does not fit cleanly into one of the five requirements of § 1120.220(C). The POMS on cash loans defines a "bona fide agreement" as one that is "legally valid and made in good faith." § 1120.220(A)(3). This definition applies to all loans, not just informal loans, and can fairly be taken to impose an independent duty to determine whether the loans were made in good faith, regardless of whether or not they satisfy the five requirements. Furthermore, although the POMS warrants judicial respect, *see Washington*, 537 U.S. at 385, it is not the product of formal rulemaking and is not controlling law. In a case such as this, where strict application of the POMS might lead to an incongruent result, we feel compelled to consider all circumstances in deciding whether the notes at issue are bona fide.

Here, the circumstances demonstrate that the notes are likely not bona fide cash loans. Several facts point to this conclusion. First, the loans are not arms-length transactions; they are informal loans between close family members who are not in the business of lending money or

---

[4] Plaintiffs' argue that under § 1120.220(D)(3)(b), the decisionmaker must "[a]ssume the bona fide loan agreement is negotiable and is a resource, *unless the lender raises questions about the negotiability of the agreement and wants to rebut this assumption.*" (emphasis added). The potential for abuse cited by Defendants cautions against following this POMS provision too literally. Clearly, a lender would not raise questions about an agreement if the agreement was an artifice designed to provide the lender with undeserved Medicaid assistance.

[5] We recognize Plaintiffs' argument that Defendants failure to investigate the feasibility of repayment should not count against the Plaintiffs. However, at this stage, we will consider the record as it is. Plaintiffs will have the opportunity to produce evidence on the feasibility of the repayment plans as the case proceeds.

providing credit.  As the Third Circuit noted in a tax case, "Where . . . the transactions occur between related entities rather than at arms' length, they are subject to particular scrutiny because the control element suggests the opportunity to contrive a fictional debt. . . .  Thus, a transaction must be measured against an objective test of economic reality and characterized as a bona fide loan only if its intrinsic economic nature is that of a genuine indebtedness."  *Geftman v. Comm'r of IRS*, 154 F.3d 61, 68 (3d Cir. 1998) (internal quotations omitted).  Second, the Defendants have produced an affidavit stating that some of the Plaintiffs' children have power of attorney over their parents, the Plaintiffs.  (Josephick Cert. ¶ 3, appended to Defs.' Opp'n to Mot. for Prelim. Inj.) [16-1].  In a similar case in which a Medicaid applicant loaned money to her Power of Attorney, Judge Pisano cited the power-of-attorney relationship as one factor in the court's conclusion that the loan agreement "appear[ed] to be a 'sham transaction' designed to avoid application of the rules governing Medicaid eligibility."  *Wesner v. Velez*, 2010 WL 1609674, at *4 (D.N.J. 2010).  Third, as discussed above, the loans are not backed by any collateral and there is no information available to this Court on the borrowers' ability to repay the notes, which may explain why Plaintiffs seek to argue that the notes have zero current market value.  Fourth, the timing of the loans is suspicious: Plaintiff Sable's first loan was made two weeks before her application, and Plaintiff Lanza's loans were made three weeks prior to his application.  (*See* Josephick Cert. ¶ 2.)  Finally, according to Defendants, the loans are in the exact amount of excess resources preventing Plaintiffs' Medicaid eligibility, (Opp'n Br. 2; *see* Am. Compl. Ex. G, at 1, 3), which suggests that the notes were not made in good faith but in an attempt to bring Plaintiff's resources under the eligibility limit.

Perhaps each of these facts in isolation would not provide conclusive evidence of bad faith, but taken together, they suggest a purposeful attempt to thwart the Medicaid statute's

eligibility requirements. Plaintiffs may ultimately be able to show that these facts are not the product of a bad-faith arrangement. However, the party seeking a preliminary injunction has the burden of showing likelihood of success on the merits, and Plaintiffs have not sustained their burden at this time.

    2. <u>Promissory Notes</u>

For the same reasons that we find Plaintiffs' notes unlikely to qualify as cash loans under § 1120.220, we also find that the notes are not promissory notes under § 1140.300. To determine whether the Plaintiffs' notes can be counted as promissory notes, the POMS direct us to consider whether the notes are "bona fide" and "negotiable." *See* § 1140.300(D)(1); § 1140.300(B)(3) (defining "Negotiable Agreement").[6] Plaintiffs argue that DMAHS was required to treat their notes as promissory notes because the POMS states, "Assume, absent evidence to the contrary, that the written agreement is bona fide and negotiable." *Id.* However, Plaintiffs ignore the significant "evidence to the contrary" described in the previous section, including the relationship of the parties and the timing and amount of the loans. Because of this evidence of bad faith, we do not find it more likely than not that Defendants' failure to treat the notes as promissory notes was improper.

    3. <u>Trust-like devices</u>

Having considered both the cash loans and promissory notes provisions of the POMS, and finding that Plaintiffs are unlikely to succeed in proving that their notes qualify under either section, we proceed to the second step of the analysis: whether the Defendants acted properly in counting the notes as trust-like devices under §§ 1120.201 and 202. We conclude that they did,

---

[6] Unlike the POMS provisions on cash loans, the requirement that the loans be "bona fide" does not appear in the definitional section of the POMS on promissory notes. Nevertheless, we find that a good faith requirement can be found in the procedural section, which states, "Assume, absent evidence to the contrary, that the written agreement is bona fide and negotiable." § 1140.300(D)(1).

and accordingly stand by our earlier opinion denying Plaintiffs' request for a preliminary injunction. (Op. Den. Mot. for Prelim. Inj., Oct. 16, 2009) [32].

According to the POMS, a trust-like device exists whenever (1) a grantor (2) transfers assets (3) to a person or entity with fiduciary obligations (4) to be held or administered for the benefit of the grantor or others. § 1120.201(B)(5); § 1120.201(G)(1). The key issue we considered in our previous opinion was whether the children held the money they received for the Plaintiffs' benefit. We found that, on the evidence before us, we could not "conclude that that it is more likely than not that the promissory notes were created without any understanding that the children would hold the money for the benefit of their parents." (Op. Den. Mot. for Prelim. Inj. 11, Oct. 16, 2009) [32]. Because Plaintiffs could not show that Defendants acted improperly in analyzing the notes under the trust rules, we denied the Plaintiffs' request for a preliminary injunction.

Nothing in the Third Circuit opinion or in the parties' briefs on remand undercuts this conclusion. In fact, the Circuit confirmed the veracity of our holding that "there is nothing in the Medicaid Act or the POMS that forbids a state from instead analyzing a promissory note as a trust-like device if the facts of the situation warrant such analysis." *Sable*, 2010 WL 2929918 at *5. Our error was the failure to determine first whether the facts warranted such analysis. Having now followed the designated framework, we reaffirm our earlier conclusion.

## CONCLUSION

For the reasons stated above, it is ORDERED, on this 8th day of December, 2010, that Plaintiffs' Motion for a Preliminary Injunction on remand [48] is DENIED.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J

8